IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHELLY DONNELLY-TOVAR, on behalf of herself and all others similarly situated;

Plaintiff,

vs.

SELECT PORTFOLIO SERVICING, INC.,

Defendant.

8:12CV203

MEMORANDUM AND ORDER

This matter is before the court on a motion to dismiss filed by the defendant, Select Portfolio Servicing, Inc. ("SPS"), Filing No. 6. This is a purported class action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). The court has jurisdiction under 28 U.S.C. §§ 1692k(d), 1331, and 1337.

I. BACKGROUND

In her complaint, the plaintiff, on behalf of herself and others similarly situated, seeks actual and statutory damages against the defendant, an alleged debt collector, "arising from the routine practice of sending collection letters to consumers, like the those sent to Ms. Donnelly-Tovar which *inter alia* failed to provide the validation notice pursuant to 15 U.S.C. § 1692g(a), the debt collection warning pursuant to 15 U.S.C. § 1692e(11), misrepresented the character, amount, or status of the debt in violation of 15 U.S.C. § 1692e(2)(A) and e(10), and attempted to collect amounts not authorized by contract or law which had been discharged in bankruptcy in violation of 15 U.S.C. § 1692f(1)." Filing No. 1, Complaint at 1. Ms. Donnelly-Tovar alleges she incurred a mortgage obligation with First Franklin Loan Services ("First Franklin") for the purchase of real property. *Id.* at 2. She later came into financial difficulty, falling into arrears on

the mortgage. *Id.* She alleges she filed a Chapter 7 bankruptcy allegedly listing First Franklin as a secured creditor and First Franklin was notified of the bankruptcy filing. *Id.* at 2-3. She further alleges her obligations were discharged in bankruptcy court on May 10, 2020 and she abandoned her interest in the property. *Id.* at 3; *see also In re Donnelly-Tovar*, No. 10-80219 (Bankr. D. Neb. May 10, 2010). She also alleges she has not reaffirmed or renewed the discharged mortgage obligation with First Franklin or any other entity. *Id.* Further, she alleges that the defendant obtained her obligation to First Franklin after the debt had fallen into default. *Id.* at 3.[1]

She later received correspondence from the defendant offering to release a secured lien on the property at issue for payment in the amount of $23,891.72, which was less than the total amount of $59,729.31 secured by the lien. *Id.* at 3; Ex. A, Letter dated December 28, 2011. She alleges the December 28, 2011, letter was the initial communication from SPS. *Id.* at 4. She further alleges that it is a routine practice of SPS to send such letters. *Id.*

In the letter quoted in and attached to the complaint, SPS proposes that the payment will effect "a full and complete satisfaction of the lien on the property," noting that the "total amount secured by the lien is $59,729.31." *Id.* at 3-4; Ex. A, Letter at 1. Further, the letter sets out detailed payment instructions stating that "[p]ayment must be in the form of certified funds according to the attached instructions page for certified funds remittance" and that "[c]ertified funds may be sent in the form of a bank wire,

---

[1] In her response to the defendant's motion, relying on the public record, the plaintiff states that a foreclosure proceeding was filed in the District Court of Pottawattamie County, Iowa, captioned *National City Bank, Plaintiff, vs. Shelly Donnelly Tovar, Spouse of Shelly Donnelly-Tovar, First Franklin Financial Corporation, Omar S. Tovar, City of Carter Lake, and Parties in Possession,* NO. EQ CV-099568, and that a default judgment was entered in that case on August 28, 2009. The defendant objects to the court's consideration of this information. The court did not rely on the information in making its determination, and consequently the defendant's objections are moot.

cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect." *Id.* at 1-2. The letter states "[t]his information is for informational purposes only and is not considered an attempt to collect a debt." *Id.* at 1. The letter identifies SPS, however, as a collection agency licensed in Minnesota, North Carolina, and Tennessee. *Id.*

SPS moves to dismiss under Fed. R. Civ. P. 12(b)(6). It argues that the plaintiff's complaint does not state a claim for relief because the FDCPA does not apply "to a secured creditor's enforcement of its lien on real property when the underlying debt was extinguished and the creditor does not simultaneously attempt to collect that debt." Filing No. 7, Brief at 1. It argues that SPS had the right to enforce the lien and contends that the letter accurately explained to the plaintiff that although her "personal liability on the note may be discharged, dismissed, or subject to an automatic stay, the terms of the mortgage remain in effect. The owner of the mortgage, as lien holder, continues to have an enforceable lien on the real property.'" *Id.* at 2. It cites SPS's "repeated assurances in the Letter that it was not demanding payment, that it was not attempting to collect a debt, and that Donnelly-Tovar no longer had personal liability for the mortgage obligation," as support for its position that it "was not attempting to collect on an 'obligation or alleged obligation of a consumer to pay money,' but was instead offering options for the settlement of an *in rem* right to enforce a security interest." *Id.* at 3-4. SPS argues that "security interest enforcement activities do not constitute attempts to collect a 'debt' as defined by the FDCPA." *Id.* at 4. The defendant argues that the FDCPA is "simply not implicated" because "there was no simultaneous demand for payment, no suggestion that payment was mandatory, and no implication that Donnelly-

3

Tovar had personal financial responsibility." Filing No. 18, Reply Brief at 6. It states that the letter "does not so much as hint that Donnelly-Tovar was obligated to pay anyone," adding that she "was free to act, or not act, as she desired." Reply Brief at 10.

II. LAW

  A. Fed. R. Civ. P. 12(b)(6) Standards

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its

4

face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal,* 556 U.S. at 679.

### B. Mortgage/Bankruptcy Law

"A promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). "By contrast, a security interest is not a promise to pay a debt; it is an interest in some collateral that a lender can take if a debtor does not fulfill a payment obligation." *Id.* A mortgage is a type of security interest with real property as the collateral. *See Black's Law Dictionary* 1031 (8th ed. 2004). Generally, a mortgage also involves a promissory note. *See*, e.g., *Reese,* 678 F.3d at 1216.

5

A mortgagor's Chapter 7 discharge eliminates in personam liability for the promissory note given to obtain a mortgage loan. 11 U.S.C. § 524(a). A mortgagee's security interest in the property survives the bankuptcy proceedings notwithstanding the discharge of the mortgagor's personal liability. *See Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (citing 11 U.S.C. § 522(c)); *see also Burns v. Burns*, 11 N.W.2d 461, 463 (Iowa 1943) ("Under the laws of [Iowa] a mortgage . . . is simply a lien . . . for the purpose of securing the indebtedness.").

    C.  FDCPA

The FDCPA was enacted in 1977 for the purpose of eliminating abusive debt collection practices by debt collectors, among other things. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, —, 130 S. Ct. 1605, 1608 (2010); *Dunham v. Portfolio Recovery Associates, LLC*, 663 F.3d 997, 1000 (8th Cir. 2011). It regulates where and when a debt collector may communicate with a consumer. *See* 15 U.S.C. § 1692c. The Act "prohibits*, inter alia*, 'the use or threat of violence, obscene language, publication of shame lists, and harassing or anonymous telephone calls.'" *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1246 (8th Cir. 2006) (quoting 15 U.S.C. § 1692(d)). Under the FDCPA, debt collectors cannot use false, deceptive, misleading, unfair or unconscionable means to collect or attempt to collect a debt. 15 15 U.S.C. § 1692(d)&(f). An example of this type of prohibited conduct is "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "'Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property' if, e.g., 'there is no present right to possession of the property claimed as

6

collateral through an enforceable security interest'" is also listed as a prohibited activity under the Act. See *Glazer v. Chase Home Finance LLC*, — F.3d —, No. 10-3416, 2013 WL 141699, *6 (6th Cir. January 14, 2013) (quoting 15 U.S.C. § 1692f(6)(A)). Similarly, the FDCPA prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

In evaluating whether a debt collection letter is false, misleading or deceptive, the letter must be viewed through the eyes of the unsophisticated consumer. *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000). The unsophisticated consumer standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" *Id.* (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) and *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)). "This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters." *Id.* at 874-75; *see also Volden v. Innovative Financial Systems, Inc.*, 440 F.3d 947, 955 (8th Cir. 2006).

The FDCPA mandates that, as part of noticing a debt, a "debt collector" must "send the consumer a written notice containing"—along with other information—"the name of the creditor to whom the debt is owed[.]" 15 U.S.C. § 1692g(a)(2); *see Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (noting that the identity of the creditor in these matters is a serious matter). Under the FDCPA, "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or

transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). The "'distinction between creditors and debt collectors is fundamental to the FDCPA,'" because the Act "'does not regulate creditors' activities at all.'" *Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005) (quoting *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir. 2004)).

To be held directly liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of "debt collector." *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Congress incorporated a broad definition of both "debt" and "debt collector" into the FDCPA in order to achieve its remedial purpose. *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 167-68 (3d Cir. 2007); *see* 15 U.S.C. §§ 1692a(5), 1692a(6). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). Attorneys and law firms are covered under the Act. *Heintz,* 514 U.S. at 299 (stating that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.").

"The definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any nonoriginating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (finding error in the district court's dismissal of a complaint against mortgage lender, assignee, and servicer for FDCPA violations). "[A] debt holder or servicer is a debt collector when it engages in collection activities on a

8

debt that is not, as it turns out, actually owed." *Id.* (noting "[t]his stands to reason since the pursuit of collection activities presupposes that the collector alleges or asserts that the subject of those activities is obligated.").

The FDCPA broadly defines the word "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see Glazer,* — F.3d at —, 2013 WL 141699, *5 (noting that "[t]he focus on the underlying transaction indicates that whether an obligation is a 'debt' depends not on whether the obligation is secured, but rather upon the purpose for which it was incurred.")  "A home loan is a 'debt' even if it is secured."  *Id.*; s*ee Reese,* 678 F.3d at 1217-18; *Maynard v. Cannon*, 401 Fed. Appx. 389, 394 (10th Cir. 2010); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006).

Debt collection is performed through either "communication," "conduct," or "means," suggesting a "broad view of what the Act considers collection." *Glazer*, 2013 WL 141699 at *6.  If a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. *Id.*  A communication to collect a debt is one that either demands a payment, or implies that something is owed. *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998).  There is no categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt. *Gburek*, 614 F.3d 380, 385 (7th Cir. 2010) (noting that "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a

9

communication from a debt collector is made in connection with the collection of any debt"); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The nature of the parties' relationship is another factor to consider, as is the purpose of the communication. *Id.* at 385; *Grden*, 643 F.3d at 173 (stating that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor"); *Ruth v. Triumph Partnerships*, 577 F.3d 790, 794-95 (7th Cir. 2009). A communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA. *Gburek*, 614 F.3d at 385; *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 772-74 (7th Cir. 2003). A disclaimer identifying a communication as an attempt to collect a debt will not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance. *Gburek*, 614 F.3d at 386 n.3 (7th Cir. 2010) (involving a mortgage loan); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998).

The FDCPA draws a distinction between general debt collection and enforcement of a security interest. *Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006). "A person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6) [which prohibits certain non-judicial repossession abuses]." *Id.* at 527. However, "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." *Id.* at 528; *see also Glazer*, 2013 WL 141699 at *8 (noting that "[s]ection 1692f(6) thus recognizes that there are people who engage in the business of

10

repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts."); *Wilson*, 443 F.3d at 378 (holding § 1692f(6) "applies to those whose only role in the debt collection process is the enforcement of a security interest."); *Montgomery*, 346 F.3d at 700 (agreeing that "those who enforce security interests, such as repossession agencies, fall outside the ambit of the FDCPA," except for the purposes of § 1692f(6)); *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (noting that "repossessors" must comply with § 1692f(6)); *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir.1995) (noting that "a few provisions of the Act subject repossession companies to potential liability when they act in the enforcement of others' security interests").

Several Circuit Courts of Appeal have recently applied the FDCPA to activities involving mortgage foreclosures. *See Glazer,* 2013 WL 141699 at *5-*6 (mortgage foreclosure is debt collection under the Act); *Reese*, 678 F.3d at 1218 (rejecting the distinction between attempts to collect a debt and purported attempts to enforce a security interest); *Birster v. American Home Mortg. Servicing, Inc.,* 481 Fed. Appx. 579, 583, 2012 WL 2913786, **4 (11th Cir. July 18, 2012) (holding that a mortgage loan servicer's alleged conduct supported conclusion that it engaged in debt collection activity in addition to its activity to enforce security interest); *Bridge v. Ocwen Federal Bank*, *FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (holding that a mortgage loan servicer can be either a creditor or a debt collector but cannot "define itself out of either category," and was a debt collector in that case); *Wilson,* 443 F.3d at 376 (holding that the FDCPA may apply to efforts to recoup a debt through foreclosure, stating that to hold otherwise "would create an enormous loophole in the Act immunizing any debt

11

from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt"); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 235 (3d Cir. 2005) (stating that "the text of the FDCPA evidences a Congressional intent to extend the protection of the Act to consumer defendants in suits brought to enforce liens"); *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 (7th Cir. 2010) (holding that a letter threatening foreclosure while also offering to discuss "foreclosure alternatives" qualified as a communication related to debt collection activity);[2] *see also Stone v. Washington Mut. Bank,* 2011 WL 3678838, *9 (N.D. Ill. Aug. 19, 2011) (finding, in a case involving this defendant, that allegations "that SPS 'obtain[s] or produce[s] forged documents' and 'organize[s] and assign[s] straw-man plaintiffs in tens of thousands of mortgage-foreclosure cases nationwide, without evidence of ownership'" were sufficient to state a claim under FDCPA). The Eleventh Circuit Court of Appeals explains the rationale behind these cases:

> In every case involving a secured debt, the proposed rule [exempting any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt from the FDCPA] would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a "debt" even if it is secured.

---

[2] These holdings are not at odds with Eighth Circuit precedent. In an unpublished opinion, the Eighth Circuit affirmed this court's finding that the defendants therein could not be classified as debt collectors under the statutory scheme. *Siegel v. Deutsche Bank Nat. Trust Co.*, 409 Fed. Appx. 975, 976, 2011 WL 493116, **1 (8th Cir. 2011). However, the plaintiff's complaint in that case had not alleged facts sufficient to show the defendant therein was a debt collector and there were "no factual assertions whatsoever that the plaintiffs suffered any abusive collection practices. *Siegel v. Deutsche Bank Nat. Trust Co.*, — F. Supp. 2d —, 2009 WL 3254491, *4 (D. Neb. 2009). Notably the challenge related to a mortgage foreclosure action and the FDCPA was barred by the statute of limitations. *Id.*

*Reese*, 678 F.3d at 1217-18; see also *Wilson,* 443 F.3d at 376 (holding that the "'debt' remained a 'debt' even after foreclosure proceedings commenced" and that foreclosure lawyers may come under the general definition of "debt collector" subject to all the provisions of the FDCPA as they most frequently settle the foreclosure with a payment of money from a refinancing, or payoff from the sale of the house); see also *Kaltenbach v. Richards,* 464 F.3d 524 (5th Cir. 2006) (same); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) (holding that a collection letter's threat to execute a lien if payment is not made on a debt "does not change [the law firm's] communications to the [debtors] into something other than an effort to collect that debt" reasoning that the underlying mortgage was a qualifying transaction involving the loan of money; *Bourff,* 674 F.3d at 1241 (holding that a letter requesting payment on a promissory note secured by a mortgage is "an attempt at debt collection" within the meaning of FDCPA).

The Sixth Circuit Court of Appeals defines debt collector as including "any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition." *Bridge*, 681 F.3d at 362 (stating that "[i]t matters not whether such treatment was due to a clerical mistake, other error, or intention."). A defendant sued under the FDCPA "cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years" and may not "retroactively change the status of the plaintiff it has pursued as an alleged debtor." *Id.* at 363. FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended. *Id.* at 361 (noting "an unsettling trend in FDCPA claims" of defendants seeking to "have it both ways: after having engaged in years of collection

activity claiming a mortgage is in default," later seeking to "defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the mortgage is not in default"). The statutory language itself confirms that Congress intended to provide protection for those persons being dunned in error. *Id.*; *see also Dunham*, 663 F.3d at 1001 (providing FDCPA does provide a remedy to "non-debtors mistakenly targeted by debt-collection efforts").

    III.  DISCUSSION

The court finds the plaintiff's complaint sets forth sufficient facts to state a claim for a violation of the FDCPA. The plaintiff alleges the defendant is a debt collector and that it obtained interest in the debt after it was in default. Plaintiff has sufficiently alleged facts demonstrating that the defendant is a debt collector within the meaning of the FDCPA. The allegations of the complaint, which sets out the language of the letter and incorporates it, support a plausible inference that SPS is a debt collector and was engaged in debt collection. In the letter, SPS clearly asks for money. Although the letter states the underlying obligation was discharged, dismissed or stayed, it implies that payment is obliged, since it asks for payment of money, even providing instructions on payment. The purpose of the letter is an attempt to collect monies that were owed on the obligation. From the language of the letter, the court finds it evident that SPS's purpose was not to enforce a security interest, but an attempt to collect the underlying loan debt. Clearly, the communication is intended to encourage Donnelly-Tovar to pay a debt she is no longer obligated to pay.

The court agrees with the plaintiff that the letter could be confusing and deceptive. Although the letter truthfully states that the owner of the mortgage retains its

14

enforceable lien on the property, it does not identify itself or anyone else as the owner of the mortgage, nor inform her of the effect of any release of the lien on her interests. The court finds the defendant's letter would confuse the unsophisticated consumer. The letter is inherently contradictory. It purports to tell the plaintiff her "personal liability on the note <u>may</u> be discharged, dismissed, or subject to an automatic stay," but at the time asks for a substantial payment in "settlement." The letter states it is not an attempt to collect a debt, yet SPS is identified as a licensed debt collector. Although the letter refers to a note, no note is identified. Notably, the letter does not refer to First Franklin or any other entity, including itself, as the mortgage holder. SPS states that "compliance" is one purpose of the communication, without reference to any statute or law requiring such compliance. There is no reference to any foreclosure, or any explicit statement that the defendant has no obligation to pay the amount secured by the lien.

SPS states at one point in the letter that its records indicate the obligation "has been discharged, dismissed or is subject to an automatic stay of bankruptcy order," without stating which of those alternatives apply. Later, the letter vaguely states that the debt "may be either discharged, dismissed or subject to an automatic stay." Contrary to the defendant's assertions, the letter does not state unequivocally that the plaintiff has no obligation to pay any purported "note." When presented with these contradictory and inconsistent statements, an unsophisticated consumer would be uncertain of the nature and amount of debt she actually owed, unaware of the consequences of either payment or nonpayment, and would be left "scratching [her] head upon receipt of such a letter." *See, e.g., Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996).

The court finds that defendant's argument that the letter contains no hint of any obligation on the part of Donnelly-Tovar is disingenuous, if not specious. Its characterization of the correspondence as a simple attempt to offer the plaintiff an opportunity to obtain a release of the lien is similarly untenable. The letter clearly asks for a substantial amount of money. An unsophisticated consumer would reasonably assume there was some sort of obligation connected to the request. A fair reading of the letter shows that that SPS misrepresents the character or amount of plaintiff's debt and fails to comply with other requirements of the FDCPA. The court finds the complaint contains factual allegations from which the court can draw the reasonable inference that the defendant is liable for the FDCPA violations alleged in the complaint.

The defendant's reliance on 15 U.S.C. § 1692f(6) and on cases involving repossession of collateral is misplaced. The defendant relies on the sort of "clever arguments" and "technical loopholes" that courts have rejected in recent cases. Further, defendant's protestation that it cannot be engaged in debt collection because there is no debt is unavailing. The coverage of the FDCPA reaches consumers mistakenly dunned for a debt and those consumers have no actual debt. If the letter is not an attempt to collect a debt, then it can only be an attempt to defraud or extort money from a person with no obligation to pay it or solicitation of a gift. A disclaimer stating that the letter "is not an attempt to collect a debt," does not make that true, especially in view of indications on the face of the document that the communication is intended to obtain money and is connected to a present or former obligation to pay an indebtedness.

The collection letter at issue here is at best confusing to an unsophisticated consumer and at worst an intentionally misleading attempt to induce unsuspecting consumers into paying money on nonexistent debts. The court is troubled by the prospect that this case may involve a third-party debt buyer attempting to collect money from a consumer on a debt she does not owe.[3]

IT IS ORDERED that the defendant's motion to dismiss, Filing No. 6, is denied.

Dated this 4th day of February, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

[3] A debt buyer purchases consumer debts that have been written off by the original creditor, generally acquiring the debts for a fraction of the balance, and then attempting to collect the entire debt. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1059 (9th Cir. 2011). Because a debt buyer has no ongoing relationship with the consumer and no incentive to create goodwill, a case involving a debt buyer, as opposed to the entity that actually extended credit to the consumer, raises different concerns. Federal Trade Commission, *Collecting Consumer Debts: The Challenges Of Change, A Workshop Report* at 5 (Feb. 2009) ("*Challenges of Change*") *available at* http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf (last visited February 19, 2013) (discussing some of the consumer challenges raised by the advent of the debt-buying industry); *see* Federal Trade Commission, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* at 15 (July 2010) *available at* http://www.ftc.gov/debtcollectionreport.pdf (last visited February 19, 2013) (finding that debt collectors who have insufficient information may approach the wrong consumers, try to collect the wrong amount, or both); Federal Trade Commission, *The Structure and Practices of the Debt-Buying Industry* at 34-35 (January 2013) (noting deficiencies in the information debt collectors, including debt buyers provide to consumers in validation notices). The court is aware of numerous abuses by such debt buyers such as suits on time-barred debts. *See Challenges of Change* at 27-29; *see, e.g., FTC v. Asset Acceptance, LLC*, Case No. 8:12CV182 (M.D. Fla. Jan 31, 2012) *available at* http://www.ftc.gov/opa/2012/01/asset.shtm (settlement and payment of civil fine for attempting to collect on time-barred debt); *In re Am. Express Centurion Bank, Salt Lake City, Utah*, FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002 (Oct. 1, 2012), at 6-7 (Joint Consent Order, Joint Order for Restitution, and Joint Order to Pay Civil Money Penalty), available at http://files.consumerfinance.gov/f/2012-CFPB-0002-American-Express-Centurion-Consent-Order.pdf(consent agreement requiring bank to provide certain disclosures when attempting to collect time-barred debts).